UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| United States of America,<br><br>    Plaintiff,<br><br>    v.<br><br>David Sun,<br><br>    Defendant. | No. 2:17-cr-00223-KJM<br><br>ORDER |

Defendant David Sun moves for a reduction of his sentence under 18 U.S.C. § 3582(c)(1)(A). He argues his hypertension, type II diabetes, hyperlipidemia, history of smoking and consumption of necessary prescription immunosuppressant medication place him at risk of contracting severe illness from COVID-19 and provide "extraordinary and compelling reasons" to grant his request. The government opposes. It concedes Mr. Sun may have some medical conditions that increase his risk of severe illness from COVID-19 but argues the Bureau of Prisons (BOP) is managing his conditions and the § 3553 sentencing factors do not support a reduction in his sentence. For the following reasons, the court **grants** the motion.

I. **BACKGROUND**

Mr. Sun is currently incarcerated at FCI Lompoc, having been convicted by a jury of ten counts of identity fraud and related charges stemming from criminal conduct over a six-year period. Opp'n at 2–3; *see* J. & Commitment at 1, 3, ECF No. 153. From at least November 2010

1

1 through January 2016, Mr. Sun ran a commercial truck driving school in Richmond, California.
2 Presentence Report (PSR) ¶ 8, ECF No. 154 (under seal). In exchange for cash, Mr. Sun helped
3 his students bypass written testing requirements and obtain illegal learner's permits. *Id.* ¶ 9. He
4 also helped students obtain commercial driver's licenses despite failing the necessary driving
5 tests. *Id.* ¶¶ 8–12. His students thus drove large commercial trucks across the country despite
6 never passing the required tests. *Id.* On September 13, 2019, the jury found Mr. Sun guilty of
7 one count of conspiracy to commit unauthorized access of a computer and to commit identity
8 fraud in violation of 18 U.S.C. § 371, eight counts of production of identity documents without
9 lawful authority in violation of 18 U.S.C. § 1028 (a)(1), and one count of conspiracy to produce
10 identification documents without lawful authority in violation of 18 U.S.C. § 1028(f). *See* Hr'g
11 Minutes at 2, ECF No. 124; J. & Commitment at 1. On December 19, 2019, this court sentenced
12 Mr. Sun to thirty-seven months' imprisonment and thirty-six months' supervised release. J. &
13 Commitment at 3–4. As of the date of this order, Mr. Sun has served just shy of fifteen months of
14 his 37-month sentence; this time amounts to forty percent of his original sentence. Inmate Data at
15 3, ECF No.161-1.

16 Mr. Sun now moves to reduce his custodial sentence to time served under 18 U.S.C.
17 § 3582(c). He argues not only that his chronic illnesses and FCI Lompoc housing conditions
18 make him especially vulnerable to serious COVID-19 symptoms, but also that the sentencing
19 factors weigh in favor of his release and his release plan mitigates any possible danger to the
20 community. *See generally* Mot. The government opposes the motion, arguing prison staff can
21 properly care for Mr. Sun's medical conditions and his release would pose too great a danger to
22 the community due to the nature of his fraud convictions. *See generally* Opp'n. The matter is
23 fully briefed, *see* Reply, ECF No. 164, and was submitted on the papers, *see* E.D. Cal. L.R.
24 230(g).

25 **II.    LEGAL STANDARD**

26 The district court that imposed a custodial sentence can modify the term of imprisonment
27 under 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018. The defendant must
28 first exhaust administrative remedies. *Id.* §§ 3582(c)(1)(A). If a defendant has exhausted

administrative remedies, the analysis is twofold.  First, the court must find "extraordinary and compelling reasons warrant" the requested reduction.  *Id.* § 3582(c)(1)(A)(i).  Second, the court must consider the same factors that were applicable at the original sentencing, enumerated in 18 U.S.C. § 3553(a), to the extent they remain applicable.  *See id.* § 3582(c)(1)(A).

Section 3582 further requires a reduction to be "consistent with applicable policy statements issued by the Sentencing Commission."  *Id.* § 3582(c)(1)(A).  In 2006, the Sentencing Commission issued a policy statement addressing what qualifies as "extraordinary and compelling reasons" to release a defendant from BOP custody.  *See* U.S.S.G. § 1B1.13 (last amended November 1, 2018).  The Ninth Circuit recently has clarified: "[t]he Sentencing Commission's statements in U.S.S.G. § 1B1.13 may inform a district court's discretion for § 3582(c)(1)(A) motions filed by a defendant, but they are not binding."  *United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021).  Thus, the court here adheres to its prior practice of considering the Sentencing Commission's policy statement as guidance, recognizing that applying the policy statement is not required.

Although the Ninth Circuit has not decided which party "bears the burden in the context of a motion for compassionate release brought pursuant to § 3582(c) as amended by the [First Step Act], district courts to have done so agree that the burden remains with the defendant."  *United States v. Becerra*, No. 18-0080, 2021 WL 535432, at *3 (E.D. Cal. Feb. 12, 2021).

**III.   ANALYSIS**

The parties do not dispute that Mr. Sun has exhausted his administrative remedies as required by § 3582(c).  Mot. at 3; Opp'n at 3–4.  The court thus considers (A) whether Mr. Sun's request is supported by extraordinary and compelling reasons and (B) whether the applicable sentencing factors of § 3553(a) weigh in favor of a reduction.

**A.   Extraordinary and Compelling Reasons**

Many federal district courts, including this court, have found that defendants can demonstrate "extraordinary and compelling reasons" for compassionate release under § 3582(c)(1)(A)(i) if they show (1) their health conditions put them at increased risk of severe COVID-19 symptoms and (2) they are at risk of infection because their facility is currently

suffering from a COVID-19 outbreak or is at risk of an outbreak. *See, e.g.*, *United States v. Terraciano*, 492 F. Supp. 3d 1082 (E.D. Cal. 2020).

Mr. Sun is a sixty-six-year-old man who suffers from type 2 diabetes, essential (primary) hypertension and hyperlipidemia, and who has been taking an immune-suppressing medication[1] to treat a severe rash that broke out in October 2020, while he was incarcerated. *See* BOP Medical Records (Medical) at 1, 39, 48, 55, ECF No. 166 (under seal). Mr. Sun also alleges he smoked from age 26 to 36, citing only an email his daughter sent to his defense counsel. Jane Sun Email at 1, Ex. J. Mot., ECF No. 156-9. The CDC recognizes that several of Mr. Sun's health conditions increase the risk of severe illness from COVID-19. *See* U.S. Ctrs. for Disease Control & Prevention, *People with Certain Medical Conditions* (updated Feb. 22, 2021) (listing age greater than 65, type 2 diabetes, use of corticosteroids or "immune weakening medicines," and a history of smoking as conditions that can make one "more likely to get severely ill from COVID-19, and stating that "possibly high blood pressure (hypertension)" may do the same).[2]

Based on the public health data, district courts have found comorbidities may be an appropriate basis on which to grant compassionate release, as follows:

- District courts have found a defendant's essential hypertension may justify compassionate release. *See, e.g., United States v. Richardson*, No. 17-00048, 2020

---

[1] Mr. Sun's medical records state he was prescribed "prednisone for . . . [his] severe rash." However, his medical records do not explicitly state that prednisone is an immune-compromising drug. The defense presents it as such in its motion, Mot. at 8, and the government does not contest that position. The CDC's publications support the defense characterization. U.S. Ctrs. for Disease Control & Prevention, *Updated Healthcare Infection Prevention and Control Recommendations in Response to COVID-19 Vaccination* (updated April 27, 2021) ("Examples of such immunocompromising conditions likely include . . . receipt of prednisone >20mg/day for more than 14 days."), https://www.cdc.gov/coronavirus/2019-ncov/hcp/infection-control-after-vaccination.html, last visited May 10, 2021. The court takes judicial notice of this information. *See, e.g.*, *Dubrin v. Cty. of San Bernardino*, No. 15-589, 2017 WL 8940181, at *21 n.14 (C.D. Cal. Sept. 7, 2017), *report and recommendation adopted*, 2017 WL 4339645 (C.D. Cal. Sept. 29, 2017) ("The Court may take judicial notice of the CDC information which is not subject to reasonable dispute, in part, because it is readily determined from a source the accuracy of which cannot reasonably be questioned (i.e., the CDC website).").

[2] https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html, last visited May 8, 2021. The court takes judicial notice of this information as well.

U.S. Dist. LEXIS 108043, at *8 (E.D. Cal. June 19, 2020) ("hypertension alone" placed defendant "at higher risk of COVID-19 complications"); *United States v. Sanders*, No. 19-20288, 2020 U.S. Dist. LEXIS 67595, at *10 (E.D. Mich. Apr. 17, 2020) ("Several courts . . . have identified hypertension as an underlying medical condition that renders a prisoner higher-risk, weighing against continued detention during the COVID-19 pandemic.").

- District courts have reached the same conclusion about a defendant's type 2 diabetes. *See, e.g., United States v. Levario*, No. 12-00399, 2020 WL 3256918, at *3 (E.D. Cal. June 16, 2020) (each of defendant's comorbidities alone—asthma, diabetes, hypertension, severe obesity—would increase his risk of contracting severe COVID-19).

- A defendant's past history of smoking has weighed in favor of a defendant's release as well. *See, e.g.*, *United States v. Galaz*, 477 F. Supp. 3d 1134, 1140 (S.D. Cal. 2020) (collecting authority and research about risks of severe COVID-19 among those with history of smoking).

- Many district courts also take into account a defendant's age in evaluating a motion for compassionate release and consider a defendant aged sixty-five or older as facing a higher risk of severe illness from COVID-19. *See, e.g., United States v. Nazzal*, 466 F. Supp. 3d 753, 757 (E.D. Mich. 2020); *United States v. Zukerman*, 451 F. Supp. 3d 329, 335–36 (S.D.N.Y. 2020) (granting compassionate release to seventy-five year old defendant with diabetes, hypertension and obesity).

- Some district courts have also found a compromised immune system may warrant compassionate release, and others have granted motions for compassionate release to defendants taking immunosuppressive medications, but it is unclear whether another court has determined a prescription for an immunosuppressive medication can independently serve as the basis for a motion under § 3582(c)(1)(A)(i). *See, e.g., United States v. Sanchez*, No. 18-00140, 2020 U.S. Dist. LEXIS 70802, at *5–6, *13, *17 (D. Conn. Apr. 22, 2020) (granting compassionate release to

defendant with lupus who took an "immune weakening medication" and had taken prednisone previously); *United States v. Goins*, No. 11-cr-20376, 2020 U.S. Dist. LEXIS 100358, at *8, *20 (E.D. Mich. June 9, 2020) (defendant with hypertension who took prednisone granted compassionate release). The parties have not cited authority addressing whether the same is true of immunosuppressive medications in general or prednisone in particular.

The government acknowledges some of Mr. Sun's health conditions place him at higher risk of contracting severe illness from COVID-19. Even excluding Mr. Sun's past history of smoking, as it is not verified, the court concludes Mr. Sun's health conditions weigh in favor of compassionate release.

The court therefore turns to the evidence the parties present about the conditions at FCI Lompoc. Neither party's evidence distinguishes circumstances at FCI Lompoc from USP Lompoc. Both instead discuss conditions at the Federal Correctional Complex (FCC), which includes both facilities. As both parties agree, FCC Lompoc was at one point a site of one of the worst COVID-19 outbreaks in the prison system. *See* Mot. at 13; Opp'n at 5. The defense points to a report authored by Dr. Homer Venters in September 2020 in response to an order in *Torres v. Milusnic*, No. CV. 20-4450 CBM (C.D. Cal.), ECF No. 101-1.[3] The Venters Report describes inadequate social distancing protocols, inadequate testing and screening of detained people, and healthcare understaffing. *See* Mot. at 12–14. According to the defense, "timely access to sick call and chronic care" is lacking, which creates a particular danger to Mr. Sun as a result of his chronic health care needs. Reply at 6 (citing Venters' Report at 22–23).

In response, the government does not argue the BOP has by now corrected the problems described in the Venters Report. It instead presents generic information about protocols at FCC Lompoc, citing a document that predates the Venters Report. *See* Opp'n at 5 (citing Cross Decl., *United States v. Eddings*, 09-00074 (E.D. Cal. May 21, 2020), ECF No. 340-1). According to

---

[3] The report appears to have been unintentionally omitted from Mr. Sun's filing, but the report is publicly available on the Central District of California's docket, and its contents are undisputed. The court therefore takes judicial notice of the report on its own motion. *See* Fed. R. Evid. 201(b).

this declaration, medical staff take temperatures and check for COVID-19 symptoms daily. *See id.* (citing Cross Decl. ¶ 11). The government offers the declaration as evidence that Mr. Sun is "being monitored regularly, and his conditions are being managed and well controlled by the treatment he is receiving from FCC Lompoc." Mot. at 9. Given its relative staleness, the declaration does not support the government's argument.

The government also argues, however, that FCC Lompoc has seen much lower infection rates since the vast outbreak that prompted the Venters report, and it reports that many people in the facility complex have now been vaccinated against COVID-19. At the time the government filed its opposition, the BOP reported nine active cases of COVID-19 (3 incarcerated individuals and 6 staff members). Opp'n at 5. Currently, there are zero active COVID-19 cases at FCI Lompoc and USP Lompoc. *See* Federal Bureau of Prisons, *COVID-19 Cases* (last visited May 12, 2021).[4] Also as of the date this order is being signed, the BOP reports that 220 staff members and 951 out of the more than 1,500 people incarcerated at FCC Lompoc have been vaccinated. *See* Federal Bureau of Prisons, *COVID-19 Vaccine Implementation* (last visited May 12, 2021).[5] But the government does not state when Mr. Sun might receive a vaccination or whether he will receive a vaccination by a certain date. *See* Mot. at 4; Reply at 5. The defense represents he has yet to be offered one. Reply at 5.

In addition to his arguments about the conditions inside FCC Lompoc generally, Mr. Sun argues the BOP cannot sufficiently care for his specific health conditions. For example, he developed a severe rash in September 2020, which has not receded. *Id.* at 9; *see* BOP Medical Records at 36, 46, 55. He also claims he must take two insulin shots twice a day to manage his diabetes, which requires him to "stand in line to receive his medications twice a day in conditions that the Venters' Report described as not adequately following social distancing protocols." Mot. at 11. The government does not respond to or dispute these claims.

---

[4] https://www.bop.gov/coronavirus/.

[5] *Id.* The BOP does not report separate vaccination data for FCI and USP Lompoc. The total incarcerated population figures reported above are those reported on the Bureau of Prisons' website. *See* Federal Bureau of Prisons, *USP Lompoc* (last visited May 12, 2021), https://www.bop.gov/locations/institutions/lom/ and Federal Bureau of Prisons, *FCI Lompoc* (last visited May 12, 2021), https://www.bop.gov/locations/institutions/lof/.

7

A number of district courts, including this court, have found that the combination of an inmate's particular health conditions and the conditions at FCI Lompoc can make for "extraordinary and compelling reasons" under § 3582(c)(1)(A)(i). *See, e.g., United States v. Nieves-Lopez*, No. 2:19-37, 2021 U.S. Dist. LEXIS 8667, at *6–*8 (E.D. Cal. Jan. 15, 2021). This is such a case. Mr. Sun's persistent rash combined with his individualized health conditions and living arrangements at FCC Lompoc provide extraordinary and compelling reasons warranting his release.

**B.     Section 3553(a) Sentencing Factors**

Even though Mr. Sun has established he faces a high risk of severe symptoms if he contracts COVID-19, that does not end the analysis under § 3582(c)(1)(A). To grant a motion for compassionate release, the court must also be satisfied that the requested reduction in sentence would not conflict with the relevant factors listed in 18 U.S.C. § 3553(a). Here, these factors weigh in favor of Mr. Sun's release, and Mr. Sun's release plan strengthens this conclusion.

First, the court reflects on the "nature and circumstances of the offense." *See* 18 U.S.C. § 3553(a)(1). While Mr. Sun's crimes were serious, they were essentially non-violent. The government argues that Mr. Sun's criminal behavior resulted in the "conscious or reckless risk of death or serious bodily injury to an individual" because he allowed unqualified drivers on the highways. Opp'n at 12. That the government does not point to any death that occurred due to Mr. Sun's fraudulent behavior does not undercut the strength of its argument in this respect.

Second, the court considers the length of Mr. Sun's sentence in assessing the appropriateness of release, though this factor is not dispositive. Mr. Sun has completed slightly more than forty percent of his sentence. This court and others have granted compassionate release to defendants serving less time overall, in balancing all of the relevant factors. *Terraciano*, 2020 U.S. Dist. LEXIS 183414, 2020 WL 5878284, at *5 (collecting cases of courts' granting compassionate release to defendants who served less than 30 percent of sentence imposed). This factor weighs slightly against Mr. Sun, but not so much so as to overcome other factors.

/////

Third, the court considers the need to "protect the public from further crimes" and "any pertinent policy statement," including by exercising its discretion to consider any dangers early release might pose to the community. *See* 18 U.S.C. § 3553(a)(2)(C), (a)(5); *United States v. Numann*, No. 16-00065, 2020 WL 1977117, at *3 (D. Alaska Apr. 24, 2020) (citing U.S.S.G. § 1B1.13(2)). Mr. Sun has no prior criminal history, and as discussed before, his crimes were essentially non-violent and did not involve any allegations of violence, threat of violence, nor did it involve firearms or other dangerous weapons.

Fourth, Mr. Sun's advanced age of sixty-six, the three-year term of supervised release he still faces, and his release plan all mitigate any danger his release might pose to the community. If released, Mr. Sun will live with his wife and two children in their house in Davis, California. Mot. at 18. His wife will provide for his health insurance through her employment at Sutter Hospital. *Id.* Mr. Sun also has the support of his church group and family. *Id.* This court is advised the probation office has reviewed and found acceptable the proposed residential address, and does not recommend a condition of home confinement.

In sum, Mr. Sun's combination of medical conditions place him at high risk of experiencing severe complications from COVID-19 if he is infected, and those conditions provide extraordinary and compelling reasons justifying compassionate release under the statute. Overall, the sentencing factors do not weigh against his release. The court therefore reduces Mr. Sun's sentence to time served.

## IV. CONCLUSION

The motion for compassionate release, ECF No. 156, is **granted.**

The court modifies Mr. Sun's sentence of incarceration of 37 months to time served. All previously-imposed conditions of supervised release remain in effect.

There being a verified residence and an appropriate release plan in place, this order is stayed for up to seven days for Mr. Sun to make appropriate travel arrangements and for BOP to ensure the defendant's safe release. The defendant shall be released as soon as appropriate travel arrangements are made and it is safe for the defendant to travel. There shall be no delay in ensuring travel arrangements are made. If more than seven days are needed to make appropriate

9

travel arrangements and ensure the defendant's safe release, then the parties shall immediately notify the court and show cause why the stay should be extended.

The court orders Mr. Sun to self-isolate for fourteen days in his wife's residence, as a means of protecting his health and that of others residing in the home. He must also comply with all applicable public health orders.

This order resolves ECF No. 156.

IT IS SO ORDERED.

DATED: May 12, 2021.

_____
CHIEF UNITED STATES DISTRICT JUDGE